JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Peter Smith

## DEFENDANTS

Lancaster County Children and Youth, et al.

**(b)** County of Residence of First Listed Plaintiff **Lancaster**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Lancaster**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher A. Sarno, Esq., Clymer Musser & Sarno PC
408 West Chestnut Street, Lancaster, PA 17603
717-299-7101

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983 and 42 U.S.C. 1985

Brief description of cause:
Deprivation of Rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
Aug 13, 2026

SIGNATURE OF ATTORNEY OF RECORD
*C. A. S.*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44
## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: **federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

10/2024

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: Lancaster County Children and Youth, 150 North Queen Street, Suite 111, Lancaster, PA 17603

---

*RELATED CASE IF ANY:* Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  *see certification below*
- ☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):*_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☐ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

**☒ X**  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| Peter Smith | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| Lancaster County Children and Youth, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                         ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)


| August 13, 2026 | Christopher A. Sarno, Esq. | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 717-299-7101 | 717-299-5115 | chris@clymerlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.



American LegalNet, Inc.
www.FormsWorkFlow.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PETER SMITH, individually,
     Plaintiff,

   v.

LANCASTER COUNTY CHILDREN
AND YOUTH, CRYSTAL A. NATAN,
individually, and in her official capacity;
ROBIN M. BOYER, individually, and in
her official capacity, JOSHUA ROBINETTE,
individually, and in his official capacity,
ALEXANDRIA CORDERO, individually,
and in her official capacity, and ERIC QUIROZ,
individually, and in his official capacity,
     Defendants.

Civil Action No: _____

COMPLAINT

JURY TRIAL DEMANDED

## COMPLAINT

1. This case arises from an extended, catastrophic institutional failure. Peter Smith (hereinafter "Smith") was in the midst of a divorce with Melissa Smith (hereinafter "M. Smith"). Together they are parents to four (4) children. In an effort to obtain full physical and legal custody of her children, and to prevent Smith from having contact, Melissa Smith reported several child abuse claims against Peter Smith, including sexual abuse of the couple's oldest child A.S.

2. The claim of sexual abuse was investigated by Lancaster County Children and Youth (hereinafter "CYS"), and the result was Unfounded.

3. M. Smith was herself previously employed with the Lancaster County CYS. Thereafter, she obtained a Master of Social Work degree, became a licensed social worker, and licensed Clinical Social Worker.

4. M. Smith had knowledge of the procedures and policies of CYS. In addition, M. Smith, as a licensed clinical counselor, specializes in trauma and post-traumatic stress disorder, family conflict, and sexual abuse.

5. Directly afterward, M. Smith made complaints to the The Department of Human Services, Office of Children, Youth, and Families (hereinafter "OCYF"), who has the authority to monitor compliance with state regulations and the Child Protective Services Law of the county CYS agencies. OCYF, based off this complaint, began investigating Lancaster County Children and Youth.

6. Thereafter, A.S., with the help of M. Smith, expanded on her allegation of sexual abuse against Smith, and a new CYS investigation began. The original caseworker and supervisor, who oversaw the first investigation, began a new investigation. It is believed, and therefore averred, that the caseworker, Yanice Bailey (hereinafter "Bailey"), and supervisor, Amber Redcay (hereinafter "Redcay"), both evaluated the new expanded allegations, and found them not to be credible. Both Bailey and Redcay were ready to determine the case Unfounded. It was at this point, based off the prior OCYF complaints, that CYS removed both Bailey and Redcay from the investigation, and switched the investigation to a caseworker and supervisor, who were not in the same investigating unit, but the general unit. The caseworker was Defendant, Alexandria Cordero (hereinafter "Cordero"), and the supervisor was Defendant, Joshua Robinette (hereinafter "Robinette").

7. During a determination conference, which included Defendants Cordero, Robinette, Robin M. Boyer (hereinafter "Boyer"), and Eric Quiroz (hereinafter "Quiroz"), a decision to Indicate was made. The decision was based on avoiding further OCYF investigations, and the fear of what M. Smith would do with another Unfounded decision. Indeed, the decision made at the meeting was

2

to protect CYS by just simply Indicating Smith, knowing that he would appeal, and to let someone else worry about it.

8. Smith has suffered immeasurably because of this decision. Based off this decision, a Protection From Abuse Order was temporarily granted, and custody visits ended for Smith. Smith has lost years with his children, who have now been in the sole custody of their mother, and who no longer want to see Smith.

9. Plaintiff brings this Complaint to seek justice, including compensatory and punitive damages, and all other available relief, for the injuries caused by the Defendants' unlawful conduct.

## THE PARTIES

10. Plaintiff, Peter Smith, an adult individual, who may be contacted through his undersigned counsel.

11. Defendant, Lancaster County Children and Youth ("CYS") is a public, county-level agency that operates under the Pennsylvania Public Welfare Code. The agency is state-supervised, but county-administered agency. OCYF provides state-wide supervision, establishes laws and regulations, but the county-level agency operates as its own independent agency. The county commissioners oversee the agency.

12. Defendant, Crystal A. Natan (hereinafter "Natan"), is the Executive Director of Lancaster County Children and Youth. This Complaint is being filed against Natan in her capacity as Director of CYS, and in her individual capacity.

13. Defendant, Robin M. Boyer, was Director of Intake Services at Lancaster County Children and Youth before retiring at the end of 2024. This Complaint is being filed against Boyer in her capacity as Director of Intake at CYS, and in her individual capacity.

3

14. Defendant, Joshua Robinette, is a caseworker supervisor at Lancaster County Children and Youth. This Complaint is being filed against Robinette in his capacity as caseworker supervisor at CYS, and in his individual capacity.

15. Defendant, Alexandria Cordero, is a caseworker at Lancaster County Children and Youth. This Complaint is being filed against Cordero in her capacity as caseworker at CYS, and in her individual capacity.

16. Defendant, Eric Quiroz, Esquire, is a Lancaster County Solicitor for Lancaster County, Pennsylvania. This Complaint is being filed against Quiroz in his capacity as county solicitor, and in his individual capacity.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States, including the Fifth (5th) and fourteenth (14th) Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

18. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Pennsylvania, specifically Lancaster County, and the Defendants reside in this District.

## FACTUAL ALLEGATIONS

**A. Child Protective Services Law ("CPSL")**

4

20. Under 23 Pa.C.S. § 6362, the county agency is the sole civil agency responsible for investigating reports of child abuse. A report alleging sexual abuse is treated as a Child Protective Services (CPS) matter rather than a General Protective Services (GPS) matter.

21. CYS must conduct an independent inquiry including: interviewing the child (often through a forensic interview at a Child Advocacy Center); interviewing parents, household members, and other witnesses; reviewing medical, school, counseling, and treatment records; coordinating with physicians, therapists, and law enforcement; and assessing the safety of siblings and other children in the household. 23 Pa.C.S. § 3490.54

22. The agency must make its own determination and may not merely adopt the conclusions of another agency. 23 Pa.C.S. § 3490.54.

23. Within the statutory investigation period (generally 60 days), the county agency must classify the report in one of three ways: Founded report – supported by a judicial adjudication or criminal conviction; or, Indicated report – supported by substantial evidence, including medical evidence, the child protective service investigation, or an admission; or, Unfounded report – insufficient evidence exists.

24. The CPSL states that the agency should preserve and stabilize family life whenever it can do so consistently with the child's safety. Removal of a child is not automatic; however, child safety takes precedence. 23 Pa.C.S. § 6362.

25. Under 23 Pa.C.S. § 6303, an "indicated report" requires substantial evidence from one of three sources: available medical evidence; or, the child protective service investigation; or, an admission by the perpetrator.

26. "Substantial evidence" means evidence that a reasonable person would accept as adequate to support a conclusion. It is more than suspicion, but less than proof beyond a reasonable doubt. 23 Pa.C.S. § 6303.

27. CYS investigators are expected to gather both inculpatory and exculpatory evidence. 23 Pa.C.S. § 6368 and 55 Pa. Code § 3490.54

28. CYS caseworker should consider alternative explanations, evaluate all available information before reaching a conclusion, avoid simply adopting law enforcement, medical, or custody litigants' opinions without independent assessment, base findings on evidence rather than assumptions or pressure from third parties. 55 Pa. Code §§ 3490.54 and 3490.55.

29. Because the agency bears the burden of proving abuse by substantial evidence, it necessarily must consider evidence tending both to support and refute the allegation. An investigator who ignores exculpatory evidence risks failing to conduct the independent investigation contemplated by § 6368 and 55 Pa. Code § 3490.54.

30. Nothing in the CPSL authorizes a finding because it is safer to indicate and let the accused appeal. Section 6368(e) requires supervisory approval and solicitor review, evidencing legislative intent that an indication be based upon substantial evidence, not avoidance and/or uncertainty.

31. Section 6368(l) grants notice, counsel rights, and information regarding expunction and appeal, reflecting legislative concern for due process and fairness.

32. When the allegation is sexual abuse, § 6368(c)(4) specifically requires interviews of all subjects, including the alleged perpetrator. Thus, making an indicated finding without obtaining the accused's statement, or without documenting reasonable efforts to do so, may be inconsistent with the statutory requirements.

33. Accordingly, the CPSL contemplates an objective, evidence-based, independently-reviewed determination, not one driven by fear of criticism, deference to police, custody disputes, or a philosophy of indicate now and sort it out later.

34. An indicated report must be approved by the administrator, or designee, and reviewed by the county agency administrator, or a designee, and then reviewed by a county agency solicitor, when the county agency is investigating. 23 Pa.C.S. § 6368(e).

35. Defendants Cordero, Robinette, Boyer, and Quiroz participated in the final determination review and decision on or about October 29, 2024.

36. This decision was made in direct violation of their duty under the CPSL, as it was said during this decision-making process, "We'll indicate it and let him appeal so we don't have to deal with it," which was confirmed under oath by Cordero, calling it a "secret."

**B.  History of Allegations and CYS Investigations**

37.  On May 7, 2024, a report of suspected child abuse was made to Lancaster County CYA and the Pennsylvania Department of Human Services concerning A. S. The allegation was Causing Sexual Abuse or Exploitation of a Child Through Any Act/Failure to Act. Smith was identified as the alleged perpetrator.

38. A.S. was forensically interviewed at the Lancaster County Children's Alliance (LCCA). A.S. was approximately thirteen (13) years old, when she indicated that at the age of five years old, a man came into her room at night and tried to penetrate her with his fingers and his penis. She stated she did not see the man but "just knew" it was Smith.

39. On July 3, 2024, Lancaster County CYA determined the May 2024 report to be Unfounded, noting the child "did not provide a clear, consistent, or credible disclosure of abuse." A significant reason that led to that determination was that A.S. was unable to say that the person who committed

7

these alleged offenses was Smith, but rather that it must have been him. No criminal charges were filed by West Lampeter Township Police. However, Detective Steven T. Heinly of West Lampeter Township Police Department conveyed to M. Smith that A.S's inability to identify Smith as the perpetrator was the leading reason for declining to charge Smith.

40. After the unfounded determination by CYS, M. Smith filed a complaint against Lancaster County CYA with (OCYF).

41. During this time period, based off the initial allegation made during May of 2024, a temporary Protection from Abuse Order was issued preventing contact from Smith.

42. Also, as part of the custody process, a Guardian *Ad-Litem* ("GAL") was appointed. On September 3, 2024, the GAL produced a report which indicated that there should be shared legal custody, and that the reunification process should begin for shared physical custody.

43. The hearing for the Protection from Abuse case was scheduled to be heard on September 17, 2024. On September 12, 2024, Lancaster County CYA received a new oral report (Report No. 20207591) of sexual abuse against Smith concerning A.S., but again relating back to the same time period/incident already reported in the first investigation, with one significant difference; namely, A.S. now said Smith was the perpetrator.

44. Another investigation began for CYS, and the Protection from Abuse hearing was continued because of the new allegations.

45. Caseworker Bailey and supervisor Redcay were assigned to the new investigation. Both were assigned to the previous investigation during May of 2024, where ultimately the case was Unfounded. Therefore, both came to this investigation with that knowledge.

46. After investigating the new matter, including interviewing Smith, both Bailey and Redcay were ready to declare this allegation as Unfounded as well.

8

47. It is believed and averred that the Lancaster County Children and Youth agency operates in two investigative units: Child Protective Services (CPS) (alleged abuse) and General Protective Services (GPS) (such as general neglect or truancy). Both CPS and GPS fall under Intake Services as opposed to the other section, Ongoing Services.

48. Both Bailey and Redcay worked in the CPS branch, which investigated allegations of alleged abuse, which is what the Smith allegations were – sexual abuse.

49. Boyer was the Director of Intake Services, which controlled both CPS and GPS units.

50. During this second investigation, and following the OCYF complaint, knowing that Bailey and Redcay were going to Unfound the new allegations, Boyer reassigned the investigation to GPS caseworker Cordero and GPS supervisor Robinette.

51. It is believed and therefore averred that both Bailey and Redcay were intending to Unfound the new allegations, and that Boyer wanted the case to be Indicated to avoid further trouble with Melissa Smith. As a result, once both Bailey and Redcay stated they would not Indicate Smith, Boyer reassigned the matter to Cordero and Robinette to get a finding of Indicated.

52. On October 29, 2024, during a conference to make a decision, Cordero, Robinette and Boyer discussed the matter and it was at this time that Boyer stated, "We'll indicate it and let him appeal so we don't have to deal with it." Cordero believed that statement was a "secret."

53. On November 1, 2024, Solicitor Quiroz conducted a legal review of the case, and approved it.

54. Following that review or determination conference, Natan also approved the decision.

55. CYS did not find substantial evidence to Indicate Smith, but rather removed a caseworker and supervisor to get the result Boyer wanted, not because it was the correct decision, but because she wanted CYS to avoid any further issues with Melissa Smith and OCYF.

9

56. Smith filed an Agency appeal of the matter on December 6, 2024. A hearing was held on May 5, 2025 wherein A.S. and Cordero testified.

57. On May 26, 2026, Administrative Law Judge David Dudley issued an Adjudication, Recommendation, and Order, finding that:

    a. CYA failed to present credible testimony that Peter Smith was the perpetrator

    b. The subject child's testimony had "no credibility whatsoever"

    c. CYA's conduct in indicating the report was "reprehensible and unethical"

    d. CYA failed to meet its burden of substantial evidence.

    e. The ALJ recommended the appeal be sustained and the indicated report be expunged from the ChildLine registry. The Department of Human Services adopted the recommendation in its entirety. (CYS Opinion (Appeal) 5.26.26.)

58. As a consequence of CYS's decision, Smith was further prevented from seeing his children for over two (2) years and counting. The decision made by CYS was justification for continuing to uphold the Protection from Abuse Order, and the denial of custody to Smith. Even with this Decision from ALJ Dudley, the timeline to undo the damage it caused still extends out months or potentially even years. Furthermore, his children have been in the exclusive custody of Melissa Smith, and now indicate they no longer want a relationship with Smith.

## CAUSES OF ACTION

### COUNT I — 42 U.S.C. § 1983
### Violation of Procedural and Substantive Due Process Rights
### *(14th Amendment – All Defendants)*

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

10

57. Under the Fourteenth Amendment to the United States Constitution, Plaintiff possesses fundamental liberty interests in the integrity of his family, the care, custody, and management of his children, and his freedom from arbitrary governmental interference in familial relationships.

58. Defendants Cordero, Robinette, Boyer, Quiroz, and Natan violated Plaintiff's Procedural Due Process rights by deliberately fabricating, misrepresenting, and distorting the investigative process under the Pennsylvania Child Protective Services Law (CPSL), 23 Pa.C.S. § 6303 et seq.

   a. Defendants deliberately removed qualified CPS caseworkers (Bailey and Redcay) who had evaluated the evidence and determined it was Unfounded, and reassigned the matter to GPS personnel (Cordero and Robinette) to manufacture an "Indicated" finding without the requisite substantial evidence required by CPSL.

   b. Defendants intentionally bypassed statutory mandates requiring a bona fide, independent, and objective investigation, operating under a explicit, bad-faith mandate; namely, indicate the abuse occurred and let Smith appeal so that CYS is not further attacked by M. Smith.

   c. By issuing an ungrounded "Indicated" report solely to evade administrative oversight from OCYF and appease a complaining parent, and disgruntled former co-worker, Defendants deprived Plaintiff of his constitutional right to a fair, impartial, and meaningful administrative evaluation before depriving him of access to his children.

59. Defendants' conduct was conscious-shocking, egregious, arbitrary, and an abuse of power.

   a. Defendants knowingly and willfully weaponized state power against an innocent parent, conscious that an "Indicated" child abuse finding would foreseeably result

11

in the loss of his parental rights, continuation of a Protection From Abuse (PFA) order, and total severance of his relationship with his children.

b. As recognized by Administrative Law Judge Dudley, Defendants' conduct in manufacturing an Indicated finding was "reprehensible and unethical," lacking any credible evidentiary support, and driven by self-preservation rather than child safety.

60. As a direct and proximate result of Defendants' procedural and substantive due process violations, Plaintiff suffered catastrophic injuries, including the loss of custody and relationship with his children for years, severe emotional distress, financial loss, and severe harm to his familial integrity.

**COUNT II — 42 U.S.C. § 1983**
**Violation of Fifth Amendment Rights**
*(Fifth Amendment – All Defendants)*

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62. To the extent Defendants acted under color of federal mandate or state authority impinging upon federally protected due process principles, Defendants violated Plaintiff's rights guaranteed by the Due Process Clause of the Fifth Amendment.

63. Defendants deprived Plaintiff of his constitutional liberty and property interests in his parental rights and reputation without due process of law by arbitrarily issuing an Indicated finding without substantial evidence and engaging in bad-faith administrative maneuvers to avoid administrative accountability.

64. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff suffered severe emotional distress, loss of time and bond with his children, reputational damage, and financial losses.

## COUNT III — 42 U.S.C. § 1983
### Malicious Prosecution
### *(Fourth and Fourteenth Amendments – Defendants Cordero, Robinette, Boyer, Quiroz, and Natan)*

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Defendants initiated, procured, and maintained administrative child abuse proceedings (the "Indicated" report under the CPSL) against Plaintiff.

77. Defendants initiated and maintained these proceedings without probable cause or substantial evidence, as confirmed by ALJ Dudley's finding that CYS failed to present credible evidence and that the subject child's allegations had "no credibility whatsoever."

78. Defendants acted maliciously, with ill will, and for a purpose other than bringing an offender to justice—specifically, to shield CYS from administrative scrutiny by OCYF, appease a custody litigant, and shift the burden of correcting their deliberate error onto Plaintiff through an appeal process.

79. The proceedings terminated fully in Plaintiff's favor on May 26, 2026, when the Department of Human Services adopted ALJ Dudley's adjudication sustaining Plaintiff's appeal and ordering the complete expungement of the report from the ChildLine registry.

80. Plaintiff suffered a severe deprivation of liberty consistent with a Fourth/Fourteenth Amendment seizure, including the imposition and continuation of a restrictive Protection From Abuse order, complete loss of physical custody, and complete loss of visitation with his four minor children.

81. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered severe trauma, loss of parental rights, and legal expenses.

## COUNT IV — 42 U.S.C. § 1983
### Vindictive Prosecution
*(Fourteenth Amendment – Defendants Cordero, Robinette, Boyer, Quiroz, and Natan)*

82. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83. Plaintiff exercised his legal and constitutional rights to defend against Unfounded child abuse allegations and participate in ongoing family court custody proceedings.

84. In response to the external administrative pressure and OCYF complaints brought about by M. Smith, Defendants acted with a punitive and vindictive motive to penalize Plaintiff.

85. Defendants retaliated by manufacturing an "Indicated" finding without substantial evidence, shifting the burden onto Plaintiff to clear his name via a lengthy administrative appeal.

86. As a direct and proximate result of Defendants' vindictive prosecution, Plaintiff was unlawfully deprived of his constitutional rights and suffered severe emotional, psychological, and financial injuries.

## COUNT V — 42 U.S.C. § 1983
### Selective Prosecution
*(Fourteenth Amendment – Equal Protection – Defendants Cordero, Robinette, Boyer, Quiroz, and Natan)*

87. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Defendants purposefully treated Plaintiff differently from other similarly situated individuals facing child abuse investigations under the CPSL.

89. While similarly situated individuals were afforded standard statutory procedures, including objective evidentiary evaluations by qualified CPS caseworkers, Defendants intentionally targeted

14

Plaintiff for disparate treatment by removing neutral caseworkers (Bailey and Redcay) and reassigning the case to non-CPS personnel with explicit instructions to "Indicate" regardless of the evidence.

90. This selective treatment was bad-faith, arbitrary, and motivated by an improper, illegitimate purpose: to resolve CYS's institutional embarrassment and administrative pressure from OCYF without regard to the actual merits or statutory standards under 23 Pa.C.S. § 6303.

91. As a direct and proximate result of Defendants' selective prosecution, Plaintiff suffered severe constitutional deprivations and damages.

## COUNT VI — 42 U.S.C. § 1983
### Monell Claim / Custom, Policy, and Failure to Train/Supervise
*(Against Defendants Lancaster County Children and Youth and Crystal A. Natan)*

92. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93. At all times relevant hereto, Defendants Lancaster County Children and Youth (CYS) and Executive Director Crystal A. Natan, acting as official policymakers, established, tolerated, or acquiesced in an official policy, practice, or custom that violated the constitutional rights of accused parents.

94. CYS maintained an unconstitutional policy, custom, or widespread practice of:

    a. Issuing "Indicated" child abuse reports without substantial evidence as an administrative "safeway" or shortcut to avoid external scrutiny, under a philosophy of "indicate now and let the accused sort it out on appeal."

    b. Reassigning investigative files away from qualified CPS caseworkers when those caseworkers concluded allegations were unfounded, in order to secure manufactured "Indicated" determinations.

15

c. Allowing supervisors and county solicitors to rubber-stamp unsubstantiated abuse findings without independent, objective evidentiary reviews in violation of 23 Pa.C.S. § 6368(e).

95. Defendant CYS and Defendant Natan failed to adequately train, supervise, or discipline caseworkers, supervisors, and legal counsel regarding their constitutional obligations to conduct fair, neutral, and evidence-based investigations under the CPSL and Fourteenth Amendment.

96. The aforesaid policies, customs, practices, and failures to train/supervise were the moving force behind the violation of Plaintiff's constitutional rights.

97. As a direct and proximate result of CYS's and Natan's unconstitutional customs and policies, Plaintiff suffered loss of custody, and profound distress.

**COUNT VII — 42 U.S.C. § 1985(3)**
**Civil Rights Conspiracy and Continuous Action**
*(All Individual Defendants)*

98. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Defendants Cordero, Robinette, Boyer, Quiroz, and Natan conspired and acted in concert for the purpose of depriving Plaintiff of his constitutional rights to due process, equal protection of the laws, and familial integrity.

100.    The conspiracy involved a clear meeting of the minds beginning with the second report to CYS, when the Defendants agreed to remove the initial investigative team, disregard exculpatory evidence, suppress the truth, and on or around October 29, 2024 and November 1, 2024 when Defendants falsely issued an "Indicated" report.

101.    Defendants committed overt acts in furtherance of this conspiracy, including:

a. Reassigning the investigation to Defendants Cordero and Robinette;

16

    b.   Executing a fraudulent CY-48 "Indicated" determination;

    c.   Endorsing the legal review via Solicitor Quiroz despite the absence of substantial evidence; and

    d.   Concealing the improper motive as a "secret" during subsequent proceedings.

102.   Defendants' conspiratorial conduct constituted a continuous course of unlawful action spanning from the reassignment of the investigation through the administrative appeal process, continuously denying Plaintiff his parental rights and access to his children.

103.   As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered severe and ongoing damages.

## COUNT VIII — STATE LAW CLAIM
### Malicious Prosecution
*(Pennsylvania Common Law – All Individual Defendants)*

104.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105.   Defendants initiated and procured administrative child abuse proceedings against Plaintiff under the CPSL without probable cause or substantial evidence.

106.   Defendants acted with actual malice and bad faith, and for an improper purpose collateral to the legitimate enforcement of child protection laws—namely, protecting CYS from OCYF oversight and shifting administrative burdens.

107.   The proceedings terminated in Plaintiff's favor when ALJ Dudley issued an Adjudication sustaining Plaintiff's appeal, finding the report without merit, and ordering its complete expungement from the ChildLine registry, a decision fully adopted by DHS on May 26, 2026.

108. Defendants are not protected by statutory or sovereign immunity, as their acts constituted willful misconduct, actual malice, and intentional violations of law under 42 Pa.C.S. § 8550.

109. As direct and proximate results of Defendants' malicious prosecution, Plaintiff suffered severe emotional distress, injury to his reputation, loss of custody and relationship with his children, and significant financial expenditures.

**COUNT IX — 42 U.S.C. § 1983**
**Violation of Fourteenth Amendment Procedural Due Process**
*(Stigma-Plus Deprivation of Liberty & Reputation – All Defendants)*

110. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

111. Under the Fourteenth Amendment to the United States Constitution, procedural due process protects individuals from governmental defamation that is accompanied by the alteration, extinction, or denial of an additional recognized legal right or status (the "Stigma-Plus" doctrine).

112. Under Article I, Section 1 of the Pennsylvania Constitution, an individual's interest in their reputation is a fundamental liberty interest protected by due process of law.

113. Defendants created and published a severe, stigmatizing false statement concerning Plaintiff by formally classifying him as a perpetrator of child sexual abuse and entering an "Indicated" report onto the ChildLine registry.

    a. Defendants made this false and defamatory designation despite knowing that no credible evidence existed to support it.

    b. Defendants acted in bad faith, this was demonstrated when the caseworker openly acknowledged that the "Indicated" finding was an administrative maneuver

18

intended to shield the agency from regulatory scrutiny and shift the burden of proof to Plaintiff.

c. The "Indicated" child abuser label inherently carries profound public disgrace, social ruin, and severe damage to Plaintiff's personal and professional standing.

114. Defendants' false and stigmatizing determination was directly linked to, and resulted in, the state-enforced deprivation and extinguishment of Plaintiff's established legal rights and legal status, specifically:

a. The "Indicated" finding served as the primary evidentiary basis for terminating Plaintiff's parental access, denying him shared legal and physical custody, and completely severing his familial bond with his four minor children.

b. The "Indicated" finding was used to justify the continuation and enforcement of a temporary Protection From Abuse (PFA) order against Plaintiff, restricting his liberty and movement.

115. Defendants inflicted this severe reputational stigma and concomitant loss of legal rights without providing Plaintiff constitutionally adequate procedural safeguards prior to the deprivation. Instead, it intentionally manufacturing a false finding and forcing Plaintiff to undergo years of administrative appeal to begin to regain his rights.

116. The state-created stigma was only formally removed on May 26, 2026, when DHS adopted ALJ Dudley's adjudication finding CYS's conduct "reprehensible and unethical" and ordering the complete expungement of the report. Plaintiff's reputation in the community has suffered throughout this process and may never be restored.

117. As a direct and proximate result of Defendants' "stigma-plus" due process violation, Plaintiff suffered catastrophic injuries, including prolonged loss of custody and relationship with

19

his children, severe emotional and psychological distress, legal expenses, and profound, lasting harm to his reputation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Peter Smith, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

a. Compensatory damages in an amount to be proven at trial for severe emotional distress, loss of parental consortium, loss of time with his children, financial loss, and harm to reputation;

b. Punitive damages against all individual Defendants in their individual capacities for their egregious, willful, malicious, and deliberate misconduct;

c. Declaratory relief declaring that Defendants' acts, policies, and customs violated Plaintiff's rights under the United States Constitution and the laws of the Commonwealth of Pennsylvania;

d. Reasonable attorney's fees, expert witness fees, and costs of litigation pursuant to 42 U.S.C. § 1988; and

e. Such other and further relief as this Court deems just, proper, and equitable.

CLYMER MUSSER & SARNO PC

Date: August 13, 2026

Christopher A. Sarno, Esq.
Attorney ID: 311511
408 West Chestnut Street
Lancaster, PA 17603
(717) 299-7101
chris@clymerlaw.com
*Attorney for Plaintiff*

20

## VERIFICATION

Peter Smith hereby states that he verifies that the statements made in this Complaint are true and correct to the best of his knowledge, information, and belief after reasonable inquiry. The undersigned understands that the statements herein are made subject of the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsifications to authorities.

Date: 8/12/2026

Peter Smith

22